| | | |
|---|---|---|
| NANCY T. DELERNO and DARRYL DELERNO | ) ) ) | CIVIL ACTION NO.: |
| Plaintiffs, | ) ) ) | DIV: |
| v. | ) ) | |
| AZIYO BIOLOGICS INC., BERKELEY BIOLOGICS LLC, MEDTRONIC SOFAMOR DANEK USA INC., SPINALGRAFT TECHNOLOGIES LLC, DCI DONOR SERVICES INC. and NEW MEXICO DONOR SERVICES | ) ) ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| Defendants. | ) ) ) | |

## COMPLAINT

NOW TO COURT, through undersigned counsel come Plaintiffs herein Nancy T. Delerno and Darryl Delerno, both persons of the full age of majority and residents of and domiciled in the State of Louisiana who, through their attorneys of record bring this Complaint against Defendants herein Aziyo Biologics Inc., Berkeley Biologic LLC, Medtronic Sofamor Danek USA Inc., SpinalGraft Technologies LLC, DCI Donor Services Inc., and New Mexico Donor Services (collectively Defendants) who allege and aver as follows:

## I.   INTRODUCTION

1.

This action seeks to recover damages for the personal injuries suffered by Nancy Delerno and Darryl Delerno which were the direct and proximate cause of

the wrongful conduct of Defendants herein in connection with the procurement, research, testing, design, development, marketing, manufacture, production, inspection, labeling, advertisement, promotion, sale, and distribution of bone allograft matrix contaminated with mycobacterium tuberculosis. This is the second time in three years that these Defendants and/or their predecessors and/or successors have been involved with a product infected by the tuberculosis bacterium.

## II.    PARTIES

### 2.

Plaintiffs Nancy T. Delerno and Darryl Delerno are husband and wife and are at all relevant times residents of the State of Louisiana residing in the Parish of Jefferson, State of Louisiana.

### 3.

Defendant Aziyo Biologics Inc. (hereinafter referred to as Aziyo) is a Delaware corporation whose registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. Aziyo's principal place of business located at 12510 Prosperity Drive, Suite 370, Silver Springs, MD 20904. Aziyo does business throughout the United States including regular business in the Parish of Jefferson, State of Louisiana.

### 4.

Aziyo sells a variety of medical products, including implantable electronic devices, orthopedic and spine repair products and soft tissue reconstruction products including bone allograft matrix.

### 5.

Upon information and belief Aziyo developed, manufactured, marketed, promoted, distributed, supplied, and/or sold an allograft bone matrix product known as FiberCell which was implanted into Plaintiff, Nancy Delerno which is the subject of this Complaint.

### 6.

Upon information and belief Aziyo Biologics Inc. has changed its name to Elutia Inc. in a rebranding attempt as a result of bad publicity related to the 2021 tuberculosis infection which was traced back to Defendants herein. This rebranding and change of name from Aziyo Biologics Inc. to Elutia Inc. did not take place until approximately September 6, 2023.

7.

Upon information and belief Aziyo/Elutia has sold its orthobiologics business unit which developed, manufactured, marketed, promoted, distributed, supplied and/or sold the allograft bone matrix material, also called FiberCel Viable Bone Matrix or VBM, to Berkeley Biologics LLC.. This sale took place on or about September 17, 2023 for a price of 34.6 million dollars.

8.

Upon information and belief Berkeley Biologics LLC has assumed responsibility for any and all liability arising and attaching to Aziyo arising out of said contaminated VBM material from Aziyo/Elutia.

9.

Upon information and belief Berkeley Biologics LLC is incorporated in the State of Delaware with its principal place of business at 880 Harbour Way South, Suite 100, Richmond California 94804 and its registered agent for service of process is David Miao, 2800 Seventh St., Berkeley California 94710. Berkely does business through out the state of Louisiana including in Jefferson Parish

10.

Defendant Medtronic Sofamor Danek Inc. (hereinafter referred to as Medtronic) is incorporated in Tennessee having its principal place of business at 2600 Sofamor Danek Drive, Memphis, Tennessee with a registered agent for service located in Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. Medtronic does business throughout the United States

including conducting regular business in the Parish of Jefferson, State of Louisiana.

## 11.

Defendant Spinal Graft Technologies LLC is a limited liability company having its principal place of business at 4340 Swinnea Road, Memphis, TN 38118 with a registered agent for service located at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808. Spinal Graft does business throughout the United States including conducting regular business in the Parish of Jefferson, State of Louisiana.

## 12.

Defendant Medtronic and Spinal Graft (collectively referred to as Medtronic) develop therapeutic and diagnostic medical products and are among the world's largest medical technology, services, and solutions companies.

## 13.

Upon information and belief, Medtronic was designated as the exclusive US distributor of the FiberCell VBM manufactured by Defendant Aziyo/Elutia.

## 14.

At all times relevant Medtronic distributed, supplied, and/or sold the FiberCell VBM which was implanted into Nancy T. Delerno and which is the subject of this Complaint.

## 15.

Defendant DCI Donor Services Inc. is incorporated in Tennessee, having its principal place of business at 566 Mainstream Drive, Suite 300, Nashville, TN 37228 with a registered agent for service located at Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee. DCI Donor Services Inc. is the parent company of New Mexico Donor Services. DCI Donor Services does business throughout the United States including conducting regular business in the Parish of Jefferson, State of Louisiana

## 16.

Defendant New Mexico Donor Services is incorporated in New Mexico, having its principal place of business at 1609 University Boulevard NE, Albuquerque, New Mexico with a registered agent for service located at Corporation Service Company, MC-CSC 1726 East Michigan Drive, Suite 101, Hobbs, New Mexico. New Mexico Donor Services does business throughout the United States including conducting regular business in the Parish of Jefferson, State of Louisiana.

17.

DCI Donor Services, Inc. and New Mexico Donor Services (collectively Donor Defendants or Donor Services) are engaged in the business of inter alia, locating, properly identifying, and qualifying parts of human cadavers and should at all times qualify for processing, distribution and ultimately for use a wide variety of surgical procedures or human bone and tissue, etc. can be appropriately and safely utilized.

18.

Upon information and belief the Donor Defendants harvested, processed, supplied, vetted donors, and/or sold human tissue for use for the FiberCell VBM which was implanted into Nancy Delerno which is the subject of this Complaint.

19.

Defendants, at all times relevant to this lawsuit, manufactured, developed, designed, tested, marketed, distributed, promoted, supplied and/or otherwise sold (directly or indirectly) FiberCell VBM and/or the human tissue used in FiberCell VBM to various locations for use in surgeries requiring bone grafting including to East Jefferson General Hospital in Metairie, Louisiana where contaminated FiberCell VBM was surgically implanted into Nancy Delerno causing her to suffer the harm as described herein.

20.

When reference is made in this Complaint to any act or omission of any of the Defendants, it shall deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or

failed to adequately supervise or properly control or direct employees while engaged in the management, direction, operation, or control of the affairs of the Defendants and did so while acting within the scope of their duties, employment or agency.

21.

The term Defendant or Defendants refers to all Defendants named herein jointly and severally unless otherwise stated.

## III.   JURISDICTION AND VENUE

22.

This court has jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000 exclusive of interest and cost and because complete diversity exist between the parties.

23.

At all times relevant to this action the Defendants have been engaged, either directly or indirectly, in the business of manufacturing, testing, marketing, selling, and/or distributing FiberCel VBM and/or the human tissue used in FiberCell VBM within the State of Louisiana with a reasonable expectation that the product would to be used in the state, and thus regularly solicited or transacted business in the state.

24.

Venue in this district is proper under 28 U.S.C. §1391 as the substantial part of the events giving rise to Plaintiff's claims occurred in this district.   In addition, the Defendants regularly conduct business in this district.

# IV.  FACTUAL ALLEGATION

## A.    FiberCel Viable Bone Matrix

### 25.

FiberCel Viable Bone Matrix FiberCel is actually a human tissue consisting of cancellous bone particles with preserved cells, combined with demineralized cortical fiber.  The human tissue donor product involved in this case was harvested by Defendants DCI Donor Services Inc. and New Mexico Donor Services (Donor Defendants).  It is engineered to be like natural tissue that uses a bone void filler in various orthopedic and spinal procedures.  The allografts contain the scaffold, growth factors and cells required for regeneration critical for successful bone formation.

### 26.

FiberCel is marketed for use in orthopedic and reconstructive bone grafting procedures with the use of autologous bone or other forms of allograft bone or alone as a bone graft.  FiberCel is made with donor tissue and growth factor cells.

### 27.

On June 20, 2019 Aziyo signed an exclusive multiyear distribution agreement with Medtronic Defendants in the US orthopedic market.  According to the agreement, Aziyo agreed to manufacture and supply FiberCel to Medtronic for distribution in the company sales and marketing organization.

## B.    The FiberCel recall

### 28.

On or about July 13, 2023 Aziyo Biologics, Inc. issued a voluntary recall of its Viable Bone Matrix (VBM) products including FiberCel and specifically the bone matrix products for the same lot as that used in the procedure performed upon Plaintiff herein Nancy T. Delerno.  Aziyo initiated the voluntary recall in response to reports of patients testing positive for mycobacterium tuberculosis (MTP)

infections following the surgical implantation of Aziyo bone matrix products as part of an orthopedic or spinal procedures.

<p style="text-align:center">29.</p>

Tuberculosis (TB) is an infectious disease caused by bacteria known as mycobacterium tuberculosis. TB is highly contagious and mostly impacts lungs but also it spreads to the lymph nodes and other parts of the body including the kidneys, sprain and spine.

<p style="text-align:center">30.</p>

Once mycobacterium tuberculosis is introduced into the body, a bacteria must then proliferate within the new host for the host to develop the disease. This bacteria was introduced in the surgical wound, the patient is already in immunocompromised position causing them to have an increased likelihood of developing TB which can be fatal.

<p style="text-align:center">31.</p>

The recalled and contaminated FiberCel VBM lots were delivered to Louisiana and were used in Louisiana.

<p style="text-align:center">32.</p>

Defendant Aziyo has acknowledged that many post-surgical infections and up multiple deaths have occurred as a result of the contaminated bone matrix and that the donor lot used on Plaintiff Nancy Delerno has tested positive for tuberculosis.

<p style="text-align:center">33.</p>

This recall acknowledged that viruses and bacteria including tuberculosis can be transplanted into patients along with the bone matrix product.

**C.     Plaintiff received the contaminated viable bone matrix products and as a result of suffered severe injury.**

<center>34.</center>

Plaintiff Nancy Delerno underwent spinal surgery on or about April 25, 2023 at East Jefferson General Hospital located in Metairie, Louisiana, Parish of Jefferson.

<center>35.</center>

Plaintiff Nancy Delerno's surgery included the use of viable bone matrix including FiberCel secured from the lot numbers which was subsequently recalled by Aziyo and identified as infected with the mycobacterium tuberculosis organism.

<center>36.</center>

Unbeknownst to Plaintiff or her physicians at the time of this surgery the bone matrix implanted to Plaintiff was contaminated with mycobacterium tuberculosis.

<center>37.</center>

On or about July 14, 2023 Plaintiff Nancy Delerno and her husband were advised that one of the contaminated donor lots of the VBM i.e., lot TDS222820 had been used in her surgical procedure and was one of those identified as contaminated with mycobacterium tuberculosis. Plaintiff subsequently tested positive for TB.

<center>38.</center>

On or about July 20, 2023 Plaintiff Nancy Delerno underwent a second surgical procedure to have the contaminated Viable Bone Matrix removed and to repair the infected bone graft site.

<center>39.</center>

Plaintiff's infection with tuberculosis with associated complications and injuries were caused by the contaminated recalled FiberCel Viable Bone Matrix used in this operation.

<center>40.</center>

As a direct and proximate result of the implantation of contaminated FiberCel Viable Bone Matrix Plaintiff Nancy Delerno has been forced to undergo a grueling medical protocol to manage her TB diagnosis.

41.

Plaintiff Nancy Delerno will require continued medical monitoring now and into the future in order to monitor Plaintiff's health related to the ongoing and serious nature of her tuberculosis diagnosis.

42.

Plaintiff Nancy Delerno would not have suffered tuberculosis and additional associated complications and injuries if Defendants sold and/or distributed a product that was free from tuberculosis contamination.

43.

Plaintiff Nancy Delerno further has experienced significant side effects from the extensive treatments caused in a cascade of sequential complications occasioned by the contaminated FiberCel Viable Bone Matrix product.

44.

As a direct and proximate result of Plaintiff's exposure to Defendants' contaminated FiberCel Viable Bone Matrix product used in her spinal surgery. Plaintiff Nancy Delerno has suffered and continues to suffer from severe pain and discomfort, emotional distress, loss of daily functions and economic loss including but not limited to present and future medical expenses, fear of death and disease, lost earnings, future lost earning capacity all of which are direct result of Defendants' liability producing conduct.

45.

Plaintiff had no way of knowing about the risk of tuberculosis associated with the use of the FiberCel Viable Bone Matrix until they had learned of the lot contamination from her physician on or about July 14, 2023. Plaintiffs, through the exercise of reasonable care could not discover the conduct by Defendants

alleged herein. Accordingly all applicable statues of limitations have been tolled by the discovery rule with respect to claims asserted by Plaintiffs against Defendants known or unknown.

<div align="center">46.</div>

Plaintiff, Darryl Delerno as a result of the injury suffered by Plaintiff Nancy Delerno, his wife, suffered loss of love, service, society, affection and support, and fear of contracting disease and or fear of death for which he is entitled to recover loss of consortium damages and a reasonable amount.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of Louisiana Products Liability Act Against Aziyo Biologics Inc., Berkeley Biologics LLC, Medtronic Sofamor Danek USA Inc. and SpinalGraft Technologies LLC**

<div align="center">47.</div>

Plaintiffs incorporate all paragraphs as though the same were set forth at length herein.

<div align="center">48.</div>

Plaintiffs bring their claims as Claimants under the Louisiana Products Liability Act, Louisiana Revised Statute §9:2800.51 et seq. hereinafter "the Act".

<div align="center">49.</div>

Defendants, Aziyo Biologics Inc., Berkeley Biologics LLC, Medtronic Sofamor Danek USA, Inc. and SpinalGraft Technologies, LLC, individually and/or jointly, are manufactures under the Act of all or portions of the subject FiberCel Viable Bone Matrix and the FiberCel Viable Bone Matrix is a product under the Act.

<div align="center">50.</div>

Defendants are not harvesters, rather they process, mix, create, build, and otherwise packaging  tissue and bone into products called FiberCel and/or Viable

Bone Matrix which are constructed products to be used in various types of surgeries, therefore making FiberCel a product and outside the scope of Louisiana Revised Statute §9:2797 and Louisiana Civil Code 2322.1.

<div align="center">51.</div>

At all times material to this lawsuit Defendants were engaged in the business of designing, manufacturing, testing, marketing, distributing and/or selling FiberCel or VBM for the sale to and use by members of the public.

<div align="center">52.</div>

Defendants manufactured, distributed and/or sold the FiberCel or VBM product which was implanted to Plaintiff's body during her spinal surgery.

<div align="center">53.</div>

Defendants owed a duty to Plaintiff to manufacture products without unreasonably dangerous defects that would cause her injury and all other duties under the Act.

<div align="center">54.</div>

In June, 2023 Defendants recalled the FiberCel Viable Bone Matrix from donor lot number TDS222820 as being contaminated with mycobacterium tuberculosis.

<div align="center">55.</div>

Defendants' quality control should have, but failed to, discover that the aforementioned FiberCel Viable Bone Matrix donor lot was contaminated.

<div align="center">56.</div>

At all times herein mentioned the aforementioned FiberCel Viable Bone Matrix was defective in its manufacture, that the FiberCel Viable Bone Matrix units were contaminated with tuberculosis which in turn transplanted a series of potentially deadly illness to patients including Plaintiff Nancy Delerno who was implanted with the contaminated FiberCel Viable Bone Matrix.

## 57.

FiberCel Viable Bone Matrix manufactured by Defendants and implanted to Plaintiff was unsafe, defective and unreasonably dangerous in normal use before it left Defendants' possession and was in the same condition when implanted into Plaintiff as when placed into the stream of commerce by Defendants.

## 58.

Defendants knew or should have known based on the industry and scientific knowledge available at the time of their manufacture and distribution that FiberCel VBM contaminated with Tuberculosis (TB) was defective, unsafe and unreasonably dangerous to FiberCel Viable Bone Matrix users including Plaintiff.

## 59.

Defendants owed an increased duty of care considering the fact that they had previous serious incidents of its products being contaminated with mycobacterium tuberculosis in June, 2021 leading to multiple deaths and serious injuries and as such failed to learn from the mistake and to take any additional precautions to prevent a repeat of that occurrence.

## 60.

At all times herein mentioned ordinary customers including Plaintiff Nancy Delerno who was implanted with the FiberCel Viable Bone Matrix could not and would not have recognized the potential defects, risks and dangers of contaminated FiberCel Viable Bone Matrix units.

## 61.

At all times herein mentioned the aforementioned FiberCel Viable Bone Matrix was implanted into Nancy Delerno in a manner which was reasonably foreseeable to the Defendants.

## 62.

As a direct and proximate result of the Plaintiff's use of the defective FiberCel Viable Bone Matrix as manufactured, designed, sold, supplied and distributed into the stream of commerce by Defendants, Plaintiff Nancy Delerno

contracted tuberculosis which has caused Plaintiff to suffer harm, damages and economic loss and Plaintiff Nancy Delerno will continue to suffer such harm into the foreseeable future.

63.

Defendants owed a duty to the general public and specifically to Nancy Delerno to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of FiberCel Viable Bone Matrix. Defendants failed to exercise such reasonable care in the design of FiberCel Viable Bone Matrix because as designed the product was capable of causing serious personal injury such as those suffered by Plaintiff during the foreseeable use of the product.

64.

The FiberCel Viable Bone Matrix implanted to Plaintiff Nancy Delerno was defective and because of its defects was unreasonably dangerous to persons who might reasonably be expected to require its use. In addition this product was dangerous to the extent beyond that which could reasonably be contemplated by Plaintiff Nancy Delerno.

65.

The FiberCel implanted into Plaintiff Nancy Delerno was defective at the time it was distributed by the Defendants or left in their control.

66.

Defendants' failure to exercise reasonable care in the design, marketing, selling, distributing and manufacturing of FiberCel Viable Bone Matrix was the proximate cause of Plaintiff's injuries and damages.

67.

Additionally Defendants owed a duty of reasonable care to accurately warn of risks associated with the use of FiberCel Viable Bone Matrix to foreseeable users including Plaintiff Nancy Delerno.

<center>68.</center>

Defendants knew or reasonably should have known that the warnings provided to users of FiberCel VBN regarding the risks associated with this use were incorrect or inadequate at least for the following material aspects:

a.      FiberCel Viable Bone Matrix was unaccompanied by proper warnings regarding all possible risks associated with its use and the comparative severity, incidence, and duration of adverse effects;

b.      Defendants failed to include adequate warnings that will alert Plaintiff and Plaintiff's physicians to the dangerous risks of FiberCel including among other things development of tuberculosis;

c.      Defendants failed to immediately warn patients and physicians after they have learned that their product was contaminated with TB; and

d.      Otherwise failed to provide adequate warning.

<center>69.</center>

By failing to warn Plaintiff Nancy Delerno and Plaintiff's physicians of adverse health risks associated with FiberCel Viable Bone Matrix Defendants breached their duty to Plaintiff Nancy Delerno of reasonable care and safety. Defendants as manufacturers and distributors of human tissue products in light of their prior experience with contaminated Viable Bone Matrix are held to the level of knowledge of an expert in the field; and further, Defendants knew or should have known that the warnings they have distributed regarding the risk of contaminated product causing TB and associated injuries and complications following the implementation of the product were inadequate.

<center>70.</center>

Plaintiff did not have the same expert knowledge as Defendants, no adequate warning of other clinically relevant information and data was communicated to Plaintiff Nancy Delerno or to Plaintiff's physicians.

## 71.

Defendants had a continuing duty to provide consumers including Plaintiff Nancy Delerno and Plaintiff's physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with FiberCel Viable Bone Matrix as it came or should have become available to Defendants.

## 72.

Defendants marketed, promoted, distributed and sold an unreasonably dangerous and defective human tissue product to healthcare providers empowered to implant the product into consumers including Nancy Delerno without adequate warnings and other clinically relevant information and data. Through both omission and affirmative misstatements Defendants misled the medical community about the risk and benefit balance of the product which resulted in severe injury to Plaintiff.

## 73.

Defendants had an obligation to provide Plaintiff and Plaintiff's physicians with adequate relevant information and warnings. Defendants breached that duty of reasonable care and safety.

## 74.

Defendants' above actions described were performed willfully and with reckless disregard for the life and safety of Nancy Delerno and the general public. As a direct and proximate result of the actions and inactions of Defendants as set forth above Nancy Delerno was exposed to contaminated FiberCel and suffered the injuries and damages set forth herein above and said actions were proximate cause of those injuries.

## SECOND CAUSE OF ACTION

**Violation of Louisiana Products Liability Act Against DCI Donor Services, Inc. and New Mexico Donor Services (a/k/a the donor Defendants)**

## 75.

Plaintiffs incorporate all paragraphs as though the same were set forth at length herein.

## 76.

Plaintiffs bring their claims as Claimants under the Louisiana Product Liability Act, hereinafter "the Act".

## 77.

The Donor Defendants are manufacturers under the Act of all portions of the subject FiberCel Viable Bone Matrix and FiberCel Viable Bone Matrix is a product under the Act.

## 78.

The Donor Defendants harvested these products, there was no intention to utilize human organs and tissues surgically implanted to patient as-is. Rather the intention was to have the product frozen, processed, mixed, ground up, altered and packaged, tested, and screened as distinctly created product in this case FiberCel Viable Bone Matrix therefore taking the harvested products of all this case outside the scope of Louisiana Revised Statute §9:2797.

## 79.

At all times herein mentioned the Donor Defendants harvested and processed human cadavers and sold and distributed human tissues into the stream of commerce for use of the aforementioned FiberCel Viable Bone Matrix.

## 80.

The Donor Defendants' quality control should have but failed to discover that the cadaver and human tissue sold for use in the aforementioned FiberCel VBM lot was contaminated with mycobacterium tuberculosis. The Donor Defendants owed a duty to Plaintiffs to harvest, process, test, screen, and distribute cadaver human tissue without unreasonably dangerous defects or cause an injury and all of the duties under the Act.

<div align="center">81.</div>

At all times mentioned herein, the aforementioned FiberCel Viable Bone Matrix product was defective in its manufacture and that it was contaminated with mycobacterium tuberculosis, that the use by the Donor Defendants of contaminated human tissue which in turn was transplanted into recipients, causing potentially deadly illness to patients including Nancy Delerno who was implanted with the contaminated FiberCel Viable Bone Matrix.

<div align="center">82.</div>

The FiberCel Viable Bone Matrix product was unsafe, defective and unreasonably dangerous before it left Defendants' possessions and was in the same condition when implanted into Plaintiff as when placed into the stream of commerce by Defendants.

<div align="center">83.</div>

The Donor Defendants knew or should have known based on the industry and scientific knowledge available at the time of their manufacture and distribution that selling a tissue contaminated with TB for use in FiberCel Viable Bone Matrix was defective, unsafe and unreasonably dangerous in normal use to product users including Plaintiff Nancy Delerno.

<div align="center">84.</div>

At all times pertinent ordinary consumers including Nancy Delerno could not and would not have recognized a potential defects, risks and dangers of contaminated FiberCel Viable Bone Matrix.

<div align="center">85.</div>

At all times herein mentioned the product containing human tissue was sold by Donor Defendants and which was implanted to Nancy Delerno in a manner which was reasonably foreseeable to the Donor Defendants.

<div align="center">86.</div>

As a direct and proximate result of the use of the defective and FiberCel Viable Bone Matrix contaminated with mycobacterium tuberculosis harvested,

processed and sold by the Donor Defendants and placed into the stream of commerce by the Defendants Nancy Delerno contracted TB which has caused Plaintiff to suffer harm, damages and economic loss that Plaintiff will continue to suffer such harm into the foreseeable future.

<div align="center">87.</div>

Additionally, the Donor Defendants owed a duty of reasonable care to adequately warn Ms. Delerno and the uses of the product, the risks associated with the use of the FiberCel Viable Bone Matrix such use as foreseeable to Donor Defendants.

<div align="center">88.</div>

While harvesting, processing, screening for and selling the human tissue product the Donor Defendants knew of the limited set of conditions to test for including mycobacterial tuberculosis, that they failed to adequately test for these conditions, failed to warn other Defendants that limited testing was done, failed to warn hospitals and end users such as Nancy Delerno that its human tissue used in the product was contaminated with tuberculosis.

<div align="center">89.</div>

The Donor Defendants knew or reasonably should have known that the warnings they did use for the product that was containing the Donor Defendants' contaminated human tissue regarding the risk associated with its use were incorrect or inadequate in at least for the following material respects.

 a. FiberCel Viable Bone Matrix including its human tissue component, was unaccompanied by proper warnings regarding all possible risks possible risks associated with its use, the comparative severity, incidence, and duration of adverse effects; and

 b. Donor Defendants failed to provide adequate warnings that will alert Plaintiff and Plaintiff's physicians to the dangerous risk of FiberCel of the donor Defendant human tissues including among other things development of TB;

c. Donor Defendants failed to immediately warn patients and physicians after they learned that the human tissue product was contaminated with TB; and

d. Otherwise failed to produce or provide adequate warnings.

## 90.

By failing to warn Plaintiff and Plaintiff's physicians of the adverse health risks associated with the contaminated human tissue used to make the product Donor Defendants breached their duty to Plaintiff of reasonable care and safety. Donor Defendants knew or should have known that the warnings they have provided regarding the risk of a contaminated human tissue product causing TB and associated injuries and complications following the implantation of FiberCel Viable Bone Matrix were inadequate.

## 91.

Plaintiff did not have the same expert knowledge as Donor Defendants and no adequate warning or other clinically relevant information or data was provided to Plaintiff or Plaintiff's physicians

## 92.

Donor Defendants had a continued duty to provide consumers including Plaintiff Nancy Delemo and/or her physicians with warnings or other clinically relevant information regarding the risks and dangers associated with this product. Donor Defendants through both omission and affirmative misstatements misled the medical community about the risk and benefit balance of their human tissue to be used in FiberCel Viable Bone Matrix.

## 93.

Donor Defendants knew or should have known that consumers including Nancy Delemo would foreseeably needlessly suffer injury as a result of the Donor Defendants' failure.

<div align="center">94.</div>

Donor Defendants' actions described above were performed willfully and with reckless disregard of the life and safety of the Plaintiff and the general public.

<div align="center">95.</div>

Donor Defendants' failure to provide adequate warnings was the proximate cause of Plaintiff's injuries and damages.

<div align="center">96.</div>

As a direct and proximate result of the actions and inactions of the Donor Defendants as set forth above Plaintiff was exposed to contaminated human tissue through the implementation of the FiberCel Viable Bone Matrix product and suffered the injuries and damages set forth herein above.

<div align="center">

## **THIRD CAUSE OF ACTION**

**Negligence and Gross Negligence Against Aziyo Biologics Inc., Berkeley Biologics LLC, Medtronic Sofamor Danek USA Inc. and SpinalGraft Technologies LLC**

97.
</div>

Plaintiff incorporates all paragraphs as though the same were set forth at length herein.

<div align="center">98.</div>

Defendants owed a duty to Plaintiff Nancy Delerno to exercise reasonable care in designing, researching, manufacturing, marking, supplying, promoting, selling, testing, screening, quality assurance, quality control and distribution of the FiberCel Viable Bone Matrix product into the stream of commerce including the duty to ensure that the product would not cause those who used it including Nancy Delerno to suffer adverse and harmful effects.

## 99.

Defendants failed to exercise reasonable care in designing, researching, manufacturing, screening, marketing, supplying, promoting, sale, testing, quality assurance, quality control and distribution of the product.

## 100.

Defendants' conduct was negligent, grossly negligent, willful, wanton, and/or reckless. They act with an extreme departure from ordinary care or the want of even scant care.

## 101.

Defendants knew or should have known that those individuals who used the defective FiberCel viable Bone Matrix product were at risk for suffering injury from it including but not limited to tuberculosis.

## 102.

Defendants were negligent and grossly negligent in designing, researching, supplying, screening, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and the sale of FiberCel Viable Bone Matrix. The negligence, gross negligence and/or willful misconduct of Defendants, their agents, servants or employees included but was not limited to the following acts or omissions:

a.     Designing, manufacturing, producing, creating and/or promoting FiberCel Viable Bone Matrix without adequately, sufficiently and thoroughly testing the FiberCel units to ensure they were free from contamination of communicable diseases including but not limited to tuberculosis;

b.     Not conducting a sufficient quality control testing program to determine whether or not the subject FiberCel was manufactured properly, was free from contamination or other defects to make it unsafe for users of the product;

c.  Failing to adequately and properly obtain and review complete donor medical history;

d.  Negligently failing to timely recall their dangerous and defective product lots at the earliest stage that it became known that certain lots of FiberCel Viable Bone Matrix were in fact dangerous or defective;

e.  Negligently manufactured FiberCel Viable Bone Matrix in a manner that was dangerous to those individuals who had it implanted to their bodies;

f.  Negligently producing the product in a manner that was dangerous to those individuals who had it transplant into their bodies;

g.  Negligently and carelessly harvesting from an unqualified and inadequately screened human donor;

h.  Failing to identify signs of injury, sickness and disease that should immediately disqualify the subject donor as a potential donor;

i.  Negligently failing to test the human donor tissue and/or bone;

j.  Failing to warn individuals who are using the product of the risk of contracting tuberculosis;

k.  Or otherwise careless and negligent; and

l.  Other acts so deemed grossly negligent.

### 103.

Defendants still should have known that consumers such as Plaintiff would suffer foreseeable injury as a result of the Defendants' failure to exercise ordinary care as set forth above.

### 104.

Defendants' negligence, gross negligence and/or willful misconduct was the proximate cause of Plaintiff Nancy Delerno's physical, mental, emotional injuries and harm and economic loss.

<div align="center">105.</div>

By reason of the foregoing Defendants are liable to Plaintiff for all injuries, harm, damages and economic and noneconomic losses in an amount to be determined in the future.

<div align="center">

## FOURTH CAUSE OF ACTION

### Negligence and Gross Negligence Against DCI Donor Services, Inc. and New Mexico Donor Services(a/k/a the Donor Defendants)

</div>

<div align="center">106.</div>

Plaintiff incorporates all paragraphs as though the same were set forth at length herein.

<div align="center">107.</div>

Donor Defendants owed a duty to Plaintiff Nancy Delerno to exercise reasonable care in harvesting, processing, supplying, promoting, selling, screening, testing, quality assurance, quality control and distribution of human tissue into the stream of commerce including a duty to ensure that the human tissue which was used in the subject FiberCel Viable Bone Matrix lot would not cause those who used it, including Nancy Delerno to suffer adverse harmful effects.

<div align="center">108.</div>

Donor Defendants failed to exercise reasonable care in the harvesting, processing, supplying, screening, testing, quality assurance, quality control, sale and distribution of their human tissue product for use in FiberCel Viable Bone Matrix.

<div align="center">109.</div>

Donor Defendants' conduct was negligent, grossly negligent, willful, wanton and/or reckless and they act with an extreme departure from ordinary care or the want of even scant care.

Donor Defendants knew or should have known that those individuals who were exposed to the contaminated human tissue in the product in question were at risk from suffered harmful effects from it including but not limited to tuberculosis as well as other severe injuries or permanent and long-lasting nature.

Donor Defendants were negligent and grossly negligent in the harvesting, processing, supplying, screening, testing, quality assurance, quality control, sale and/or distribution of their human tissue product. The negligence, gross negligence or willful misconduct of Donor Defendants, their agents, servants, representatives and/or employees included but was not limited to the following acts and/or omissions.

a. Harvesting, processing and selling human tissue for use in FiberCel without adequately, sufficiently or thoroughly testing or screening the human tissue to ensure that it was free from contamination of communicable diseases including but not limited to tuberculosis;

b. Not conducting a sufficient quality control testing program to determine whether or not the subject human tissue used in the aforementioned defective FiberCel lot was properly harvested and was free from contamination or other defects making it unsafe for users of the product;

c. Failing to adequately and properly obtain and review complete donor medical history and to screen said donors;

d. Negligently failing to timely recall their dangerous and contaminated human tissue and the earliest stage that it became known that human tissue sold for use was in fact dangerous and defective and contaminated with tuberculosis;

e. Negligently harvesting, processing, screening and selling human tissue for use in FiberCel Viable Bone Matrix in a manner that was dangerous to those individuals who had it implanted to their bodies;

f. Negligently and carelessly harvesting an unqualified and an inadequately screened human donor;

g. Failing to identify signs of injury, sickness and/or disease that would have immediately disqualified the subject donor as a potential donor;

h. Negligently failing to test the human donor tissues and/or bone;

i. Failing to warn individuals who were using their human tissues of the risk of contracting tuberculosis;

j. Or otherwise careless and negligent; and

k. Other acts that are deemed grossly negligent.

## 112.

Donor Defendants knew or should have known that consumer such as Plaintiff Nancy Delerno would suffer foreseeable injury and would be in increased risk of harm as a result of Donor Defendants' failure to exercise ordinary care as set forth above.

## 113.

Donor Defendants' negligence, gross negligence and/or willful misconduct was the proximate cause of Plaintiff Nancy Delerno's injuries.

## 114.

By reason of the foregoing Donor Defendants are liable to Plaintiff Nancy Delerno for all injuries, harms, damages and economic and noneconomic losses in an amount to be determined in the future.

## FIFTH CAUSE OF ACTION

**Breach of Implied Warranty Against Aziyo Biologics Inc., Berkeley Biologics LLC, Medtronic Sofamor Danek USA Inc. and SpinalGraft Technologies LLC**

<div align="center">115.</div>

Defendants breached the implied warranty for FiberCel Viable Bone Matrix because it was contaminated, unmerchantable and not fit for its intended purpose resulting in personal injury suffered by Plaintiff Nancy Delerno including her development of tuberculosis and need for continuing treatment thereof. Plaintiff Nancy Delerno was a foreseeable user of the product designed, manufactured and placed into the stream of commerce by Defendants.

<div align="center">116.</div>

By reason of the foregoing Defendants are liable to Plaintiff Nancy Delerno for all her injuries, harm, damages and economic and noneconomic losses in an amount to be determined at trial.

<div align="center">

## SIXTH CAUSE OF ACTION

**Breach of Express Warranty Against Aziyo Biologics Inc., Berkeley Biologics LLC, Medtronic Sofamor Danek USA Inc. and SpinalGraft Technologies LLC**

117.
</div>

Plaintiff hereby incorporates by reference the allegations contained in all paragraphs of this Complaint as if they were set forth at length herein.

<div align="center">118.</div>

At all times mentioned Defendants expressly represented and warranted Plaintiff and Plaintiff's agents and physicians by and through statements made by Defendants and their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for paid physicians, patients and/or the public that FiberCel Viable Bone Matrix and its human tissue components were safe, effective, fit and proper for their intended use and that Plaintiff and Plaintiff's physicians utilized the product relying upon these warranties.

<center>119.</center>

Defendants expressly stated and promote that the FiberCel Viable Bone Matrix is processed in sterile conditions and screened for bacteria and communicable diseases.

<center>120.</center>

In utilizing this product Plaintiff relied on the skill, judgment, representation and foregoing express warranty of the Defendants. These warranties and representations were false in that FiberCel Viable Bone Matrix is unsafe and unfit for its intended uses.

<center>121.</center>

As a result of the above-mentioned breach of express warranties by Defendants Plaintiff Nancy Delerno suffered injuries and damages as alleged herein.

<center>**SEVENTH CAUSE OF ACTION**</center>

<center>**Breach of Express Warranty Against DCI Donor Services Inc. and New Mexico Donor Services (a/k/a the Donor Defendants)**</center>

<center>122.</center>

Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

<center>123.</center>

Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraph of this Complaint as if they were set forth at length herein.

<center>124.</center>

At all times mentioned the Donor Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians by and through statements made by Defendants and their authorization agents or sale representatives orally and/or in publications, package inserts and/or other written materials intended for physicians, medical patients and the public that their human

tissue products sold for use in FiberCel Viable Bone Matrix was safe, effective, fit and proper for its intended use. Plaintiff and Plaintiff's physicians utilized FiberCel and the human tissue using FiberCel relying upon these warranties.

125.

In utilizing FiberCel and the human tissue issued in FiberCel Viable Bone Matrix Plaintiff relied on the skill, judgment, representation and forgoing express warranties of the Defendants. These warranties and representations were false in that FiberCel Viable Bone Matrix and its human tissue components are unsafe and unfit for its intended uses.

126.

As a result of the above-mentioned breach of express warranties by Defendants Plaintiff suffered injuries and damage as alleged herein.

## EIGHTH CAUSE OF ACTION

**Medical Monitoring Against Aziyo Biologics Inc., Berkeley Biologics LLC, Medtronic Sofamor Danek USA Inc. and SpinalGraft Technologies LLC**

127.

Plaintiff hereby incorporates by reference the allegations contained in all paragraphs of this Complaint as if they were set forth at length herein.

128.

As a result of Defendants' negligence and gross negligence Plaintiff Nancy Delerno has been diagnosed with tuberculosis and may in the future experience ongoing symptoms of TB in addition to other injuries and harm that she may suffer as a result of her TB diagnosis.

129.

Monitoring procedure exists to monitor Plaintiff's TB as all TB patients require continuing and ongoing monitoring of their potentially deadly disease.

<div align="center">130.</div>

Plaintiff will be required to undergo testing and analysis to monitor the spread and progression of her TB.

<div align="center">131.</div>

Ongoing TB testing requires expenditures of time and money.

<div align="center">132.</div>

The prescribed monitoring regime is different from that normally recommended for an individual like Plaintiff in the absence of the development of TB.

<div align="center">133.</div>

The prescribed monitoring regime is reasonably necessary according to contemporary scientific and medical principles.

<div align="center">134.</div>

Defendants' acts were negligent, grossly negligent and want of even slight care and diligence, they should be held accountable and should compensation Plaintiff for the ongoing costs of monitoring her TB.

## NINTH CAUSE OF ACTION

### Medical Monitoring Against DCI Donor Services, Inc. and New Mexico Donor Services (a/k/a the Donor Defendants)

<div align="center">135.</div>

Plaintiff hereby incorporates by reference all the prior allegations contained in the above paragraphs of this Complaint as if they were set forth at length herein.

<div align="center">136.</div>

As a result of the Donor Defendants' negligence and gross negligence Plaintiff has been diagnosed with TB and may in the future experience ongoing

symptoms of TB in addition to other injuries and harm that she may suffer as a result of her TB diagnosis.

<center>137.</center>

Monitoring procedure exists to monitor Plaintiff's TB since all TB patients require continuing and ongoing monitoring of their potentially deadly disease.

<center>138.</center>

Plaintiff will be required to undergo testing and analysis to monitor the spread and progression of her TB.

<center>139.</center>

Ongoing TB testing requires expenditures of time and money.

<center>140.</center>

The prescribed monitoring regime is different from that normally recommended for an individual like Plaintiff in the absence of the development of TB.

<center>141.</center>

The prescribed monitoring regime is reasonably necessary according to contemporary scientific and medical principles.

<center>142.</center>

Donor Defendants' acts were negligent, grossly negligent and want of even slight care and diligence, they should be held accountable and should compensate Plaintiff for the ongoing costs of monitoring her TB.


<center>**REQUEST FOR RELIEF**</center>

WHEREFORE Plaintiffs pray for relief against the Defendants, AZIYO BIOLOGICS INC., BERKELEY BIOLOGICS LLC, MEDTRONIC SOFAMOR DANEK USA INC., SPINALGRAFT TECHNOLOGIES LLC, DCI DONOR SERVICES INC. and NEW MEXICO DONOR SERVICES

jointly and severally as follows:

a.  Compensatory damages in the amount of $5,000,000.00 including interest and cost from the date of judicial demand and/or in an amount to fully compensate Plaintiff Nancy Delerno and/or Darryl Delerno for all past, present and future physical and mental pain and suffering and loss of consortium;

b.  Special damages in the amount of $2,500,000.00 including interest and cost from date of judicial demand in an amount to fully compensate Plaintiff Nancy Delerno and or Darryl Delerno and or for all of their injuries and damages both past and present and future;

c.  An order to establish medical monitoring protocol for Plaintiff Nancy Delerno and or Darryl Delerno to monitor their health;

d.  Attorney's fees, expenses and cost of this action;

e.  Pre-judgment and post-judgment interest to the maximum amount allowed by law; and

f.  Such further relief as this court deems appropriate, just and proper.


RESPECTFULLY SUBMITTED

**MARK W. SMITH & ASSOCIATES, PLC**


**s/ Mark W. Smith**

_____

**MARK W. SMITH (Bar # 14447)**
500 N. Causeway Blvd.
Metairie, Louisiana 70001
Telephone: 504-830-7660
Facsimile: 504-830-7661

PLEASE SERVE ALL DEFENDANTS